# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0747
Filed July 22, 2026

————————————

**In the Interest of M.H. and T.H., Minor Children,**

**L.H., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Webster County,
The Honorable Joseph L. Tofilon, Judge.

————————————

**AFFIRMED**

————————————

Jason T. Carlstrom of Carlstrom Law Firm, West Des Moines, attorney for
appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Alesha Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, attorney
and guardian ad litem for minor children.

————————————

Considered without oral argument
by Buller, P.J., Langholz, J., and Telleen, S.J.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

A mother appeals the juvenile court's order terminating her parental rights to her eight-year-old son and five-year-old daughter.[1] She argues that the State did not prove a statutory ground for termination by clear and convincing evidence, termination is not in the children's best interests, and the court should have given her a six-month extension to work toward reunification.

On our de novo review, we agree with the juvenile court that the State proved a ground for termination under Iowa Code section 232.116(1)(f) (2025) by clear and convincing evidence, terminating the mother's parental rights is in the children's best interests, and delaying permanency with a six-month extension would not be appropriate. We thus affirm the juvenile court's termination order.

## I.      Background Facts and Proceedings

The family came to the attention of the Iowa Department of Health and Human Services ("HHS") in May 2024 due to allegations that the mother was using methamphetamine while caring for the children and concerns about domestic violence between the mother and her boyfriend.[2] The juvenile court adjudicated the children as children in need of assistance

---

[1]We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's orders—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

[2] The juvenile court and HHS referred to the mother's boyfriend as the "legal father" of the children. He is not their biological father, but by the time of the termination hearing, he was listed as their father on their birth certificates. The court set another termination hearing to address his rights to the children. The court also terminated the parental rights of the unknown biological fathers of both children. This appeal concerns only the termination of the mother's parental rights.

("CINA") in September. In the October dispositional order, the court noted that "the mother has relapsed on methamphetamine and needs to reengage with treatment," and the "mother and [her boyfriend] have an unhealthy relationship," but the "children are apparently doing well at present." The court thus continued the CINA adjudication and ordered that the children remain in the mother's custody under the protective supervision of HHS.

Then, in December 2024, the children were removed from the mother's custody after she tested positive for methamphetamine, amphetamine, and THC, and her boyfriend told HHS that she and the children "were living in a drug house." HHS placed the children with their maternal grandparents, where they remained throughout this case. One year later, in December 2025, the State petitioned to terminate the mother's parental rights.

At the February 2026 termination hearing, the HHS worker testified that the mother was admitted to outpatient substance-use treatment early in the case, but she "was ultimately discharged from treatment . . . due to lack of attendance." Since then, the mother had not complied with HHS's requests to complete substance-use evaluations and treatment. Nor had the mother complied with requests to complete drug testing since July 2025, when she was "unable to finish" a mouth swab test. The worker recommended terminating the mother's parental rights because she had "not demonstrated that she is clean and sober." And the worker did not believe "six additional months would make a difference" because "the case, since the removal, [had] basically been following the same pattern over and over again."

The mother also testified at the February termination hearing. When asked what she had done to address her substance use since this case began,

she answered, "I mean I did go to treatment for a short period of time. Other than that, really nothing." She admitted that she last used methamphetamine in mid-January. And when asked if she "could take custody of the children today," she answered, "No." But she insisted that she had a "strong motivation to change," so she asked the court "for six more months" to work toward reunification.

At the end of the February termination hearing, the court informed the mother:

> [A]fter hearing the evidence, . . . I would terminate [your] parental rights today. I totally would, and I wouldn't give you six more months because you haven't done anything to prove that anything in the next six months would change anything.
>
> . . . .
>
> [B]ut the fact of the matter is that we can't finish the hearing today because there are unknown parents. [The mother's boyfriend] is not the biological father of either of these children, and the State has not done publication to notify any potential father of . . . these proceedings and it needs to do so, and so regardless of what I did today or how this case ended, in six more weeks we're going to have to come back for the other fathers anyway, so . . . we're going to hold this open for another . . . six weeks . . . for you to prove yourself, and so for [the mother], that means substance abuse treatment and prove that you have changed and you're ready to commit to being clean and sober. The next six weeks are going to be crucial. If you don't do anything over the next six weeks to show that you're serious about getting clean and sober, then expect the same opinion from me, termination of parental rights, no more six months.

The court reconvened for a second day of the termination hearing in April. At the start of the hearing, the mother's attorney requested a continuance, explaining that the mother was not present because she was "currently . . . finishing up" a substance-use evaluation. The court denied that request, reasoning: "She had . . . more than six weeks to get an evaluation

done. She knew of today's date. She knew of today's time, and it's unacceptable that, one, she waited until the last second and, two, she neglected to come to court to see to this very important matter." The court thus proceeded with the hearing as scheduled, and the mother failed to appear.

After the April hearing, the juvenile court denied the mother's request for a six-month extension and terminated her parental rights to both children under Iowa Code section 232.116(1)(f). The mother now appeals.

## II.   Statutory Ground for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show that termination is in the best interests of the children. *Id.* And third, the parent bears the burden to show whether a permissive exception applies that should preclude termination. *Id.*; *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). We need not address any step not challenged by a parent. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The mother first challenges the statutory ground for termination. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f). Under that provision, the court may terminate a parent's rights if:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

On our de novo review, we agree with the juvenile court that the State proved this ground by clear and convincing evidence. Both children were more than four years old. They had been adjudicated children in need of assistance. They had been removed from the mother's custody for more than twelve consecutive months with no trial periods at home. And—as the mother acknowledged in her testimony—the children could not be safely returned to the mother's custody at the time of the termination hearing due to her longstanding and unresolved substance-use issues. *See A.S.*, 906 N.W.2d at 473; *see also In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."); *In re S.C.*, No. 15-0262, 2015 WL 2089743, at *2–3 (Iowa Ct. App. May 6, 2015) ("A child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication or without remaining a child in need of assistance.").

## III.    The Children's Best Interests

The mother next contends that termination is not in the best interests of the children. Our "paramount concern in a termination proceeding" is the children's best interests. *L.B.*, 970 N.W.2d at 313. We consider both the children's long-range and immediate best interests. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

As the juvenile court found, the mother is "nowhere closer to reunification than she was . . . when the children were removed from her custody." Besides her brief participation in outpatient treatment early on in this case and her last-ditch effort to complete an evaluation on the second day of the termination hearing, the mother has not engaged in services to address her substance-use issues. She has not complied with HHS's requests to complete drug testing. She admitted that she started using drugs more than twenty years ago, and she last used methamphetamine the month before the termination hearing. To her credit, the mother was employed full-time throughout this case. But she lacked stable housing of her own. And she did not progress past fully supervised visits with the children.

Meanwhile, the children have been in a safe and stable home with their maternal grandparents since December 2024. They are doing well there. And the grandparents are a potential adoptive placement for both of them. Under these circumstances, we agree with the juvenile court that termination of the mother's parental rights is in the children's best interests. *See In re A.M.*, 843 N.W.2d 100, 112–13 (Iowa 2014) ("[W]e cannot deprive a child of

permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (cleaned up)).

## IV.    Additional Time for Reunification

Lastly, the mother argues that the juvenile court should have given her six more months to work toward reunification rather than terminating her parental rights. *See* Iowa Code §§ 232.117(5), 232.104(2)(b). The court may give a parent more time "only if the need for removal will no longer exist at the end of the additional six-month period." *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (cleaned up); *see also In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

Given the mother's lack of progress when offered services throughout this case, we see no prospect in the foreseeable future that she could become a safe and stable caregiver for the children. *See In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000) ("The future can be gleaned from evidence of the [mother's] past performance and motivations."). And because the children had already been removed from the mother's custody for over twelve months at the time of the termination hearing, we must view the proceedings "with a sense of urgency." *See In re C.B.*, 611 N.W.2d 489, 494–95 (Iowa 2000). The mother's last-second attempt to complete a substance-use evaluation was "simply too late" to justify a six-month extension. *See id.* at 495 ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting.").

We thus affirm the juvenile court's denial of the mother's request for more time and the termination of her parental rights to both children.

**AFFIRMED.**